MORRIS, Adm'r, etc., *v.* CHICAGO, M. & ST. P. R. Co.   (Three Cases.)

*(Circuit Court, N. D. Iowa.* November Term, 1885.)

1. RAILROAD COMPANY — HIGHWAY TRAVELER—ACCIDENT—SUNDAY—RECOVERY, HOW AFFECTED.
    If a railroad company had no right to run a train on Sunday, and if the evidence in the case shows no right on the part of one driving a wagon over the track on that day, whereby the death complained of occurred, the fact of the running of the train on that day has no effect as to a recovery.

2. SAME—CROSSING AT GRADE—LAW OF IOWA.
    Under the laws of Iowa there is nothing to prevent a railroad track being laid on an even level with a highway.

3. SAME—RECIPROCAL DUTIES—VIGILANCE, WHAT IT IS.
    The rights, duties, and obligations of a railroad company, and of travelers who drive across its track, are mutual and reciprocal. Both should keep such a lookout as a prudent man would in endeavoring to perform his duty.

4. SAME—PRECEDENCE—RIGHT OF WAY AND REASON THEREFOR.
    A railroad train, upon approaching a crossing, has precedence and the right of way over highway travelers, on account of the celerity of its motion and the difficulty of stopping it within a short distance.

5. SAME—WARNING BY APPROACHING TRAIN.
    A railroad train must give warning to highway travelers, and that warning must be reasonable and timely.

6. SAME—WARNING REQUIRED BY IOWA STATUTE—FURTHER WARNING.
    Under the laws of Iowa, when a train is within at least 60 rods of a highway crossing in front of it, there must be given two blows of its locomotive whistle, and its bell must be rung from then on continuously until the crossing is passed. But if, under the circumstances of the case, additional warning would seem necessary, such additional warning must be given.

7. SAME—HIGHWAY TRAVELERS—DILIGENCE REQUIRED.
    Highway travelers approaching a railroad crossing are charged with diligence to ascertain if a train is about to pass by; and their diligence must be greater accordingly as the peculiar locality and the circumstances of the case seem to require greater caution.

8. SAME—INJURY BY ACCIDENT—ACTION—BURDEN OF PROOF.
    The burden of proof, in case of injury received in crossing a railroad track on a highway, is upon the plaintiff to show, by a preponderance of evidence, negligence on the part of the defendant or its employes.

9. SAME—CONTRIBUTORY NEGLIGENCE.
    If a person, in driving a wagon over a railroad crossing, has failed to exercise the proper care, skill, and watchfulness, and a collision with a train occurs, he has contributed to the accident, and no recovery lies, even though negligence be proved on the part of the company or its employes.

10. SAME—OCCUPANT OF WAGON — HOW AFFECTED BY NEGLIGENCE OF DRIVER.
    The negligence of the driver of a vehicle in crossing a railroad track is the negligence of the occupants.

**11. SAME—DAMAGES—MENTAL ANGUISH OF RELATIVES.**

In actions for damages brought by an administrator against a railroad company for the death of his decedent through the company's negligence, the law does not permit the jury to award damages for the anguish and suffering of the relatives of deceased, but limits the amount to be recovered to the pecuniary loss caused to the estate of the person killed.

**12. DEATH OF WOMAN—MEASURE OF DAMAGES—FACTS TO BE CONSIDERED.**

In estimating the damages in the case of a woman killed by the negligent running of a railroad train, the jury must consider her age at the time of her death, and any other facts established by the evidence throwing light on her ability to earn money, fixing thus the loss to her estate. But the jury must bear in mind, while thus considering, that the sum awarded is given in one sum, and is freed from the uncertainties that surround and affect business life and affairs.

**13. DEATH OF CHILD—MEASURE OF DAMAGES.**

In an action against a railroad company by an administrator for the death of a child, the plaintiff is not entitled to damages accruing prior to the time when such child would have attained his or her majority.[1]

At Law.

*W. H. Foster* and *G. L. Johnson,* for plaintiff.

*Burton Hanson* and *W. J. Knight,* for defendant.

SHIRAS, J., (*charging jury.*)    J. H. Morris, as administrator of the estate of Martha J. Whitmer, and as administrator of the estate of Floyd Whitmer, and as administrator of the estate of Matie Whitmer, brings three separate actions against the Chicago, Milwaukee & St. Paul Railroad Company to recover the damages which, it is alleged, were caused to the estates of the three persons named, by the death of said persons; they having been killed in a collision between a wagon in which they were riding and a train upon defendant's road, it being claimed by plaintiff that the collision, and consequent death of said persons, was due to the negligence of the defendant.    Under the statute law of Iowa, if a person is killed through an accident caused by negligence on part of another, the pecuniary damages caused to his estate by his death may be recovered in a suit by the administrator of his estate; and these actions have been brought under the provisions of this statute by the present plaintiff, as administrator of the estate of the three persons named, it not being disputed that they are dead, and that plaintiff has been legally appointed administrator of their separate and several estates.    As the death of the three persons resulted from one and the same accident, and as the right of recovery in each case is based upon the same allegations, the court, for convenience sake, has ordered the three causes to be consolidated for the purposes of this trial before you, and hence all three cases are now submitted to you for your determination.

It appears from the evidence that the collision between the wagon and train in question took place upon Sunday, and some question has been made in regard to the effect this fact might have upon the rights of the parties.    If it were true that the railway company had no right to run its train over its road on Sunday, it would be equally true that Mr. Whitmer and his family had no right, so far as the evi-

---

[1] See note at end of case.

dence shows, to be driving in a wagon along the highway. So far as the rights of the parties that are to be determined in this controversy are concerned, the fact that the collision occurred on Sunday has no effect thereon. The case is to be determined without reference to that fact, upon the issues set forth in the instructions given you by the court, which alone are submitted to you.

Under the laws of this state, the railways and the public highways may be lawfully built, so as to intersect or cross each other upon the same level. The rights, duties, and obligations of the railroads, and of travelers upon the intersecting highways, are mutual and reciprocal. Both parties are charged with the duty of keeping a careful lookout for danger, and the degree of diligence to be exercised on either side is such as a prudent man would exercise, under the circumstances, in endeavoring fairly to perform his duty. At points where the line of a railroad crosses a wagon-road upon the same level, the trains upon the one, and the teams upon the other, have each a legal right to pass over the crossing or place of intersection, and each have the right to require the exercise of due care on part of the other to avoid a collision. From the greater speed of the railway trains, the greater difficulty in stopping the same, and' the requirements of public travel thereon, it is not expected that the train shall stop and give precedence to an approaching wagon. It is the duty of the wagon to wait for the train, as the train has the preference and the right of way. What is meant by this is that when a train and a wagon are approaching a crossing at the same time, it is the duty of the wagon to halt, and allow the train to pass over the crossing before going upon the same. In order that the wagon may thus halt in order to give preference to the train, it is the duty of the train to give due warning of its approach, so that the wagon may stop and allow the train to pass. Such warning must be reasonable and timely. The object of the warning is to secure a clear and unobstructed track at the crossing, so that the train may pass in safety, not only as regards itself, but also as to persons lawfully upon the highway. The warning, therefore, should be reasonably sufficient to accomplish the object, and what constitutes reasonable and timely warning depends upon circumstances. A warning that would be entirely reasonable and sufficient under one set of circumstances, may be wholly inadequate under other circumstances. If, at a given crossing, there are obstacles that obscure or interfere with the view along the railroad, or that may prevent the hearing, by those approaching the crossing, of the sound of the coming train, or of the whistle or bell upon the engine, or if a train is being run at a high rate of speed, these facts, or either of them, may require the exercise of greater precautions on part of the railway company in giving warning of the approach of the' train than would be required in the absence of such circumstances. What is required of the company is that, in view of the speed at which the train is being run, and of the

nature and surroundings of the crossing about to be passed, such reasonable and timely warning of the coming of the train shall be given as will enable teams and persons upon the highway, by the exercise of due care and watchfulness upon their part, to avoid a collision with the train, and to leave the crossing free and unobstructed for the passage of the train over the same. By the express provisions of the statute of Iowa, it is made the duty of the railway companies to have upon each locomotive used in the state a bell and whistle, and to cause the whistle to be twice sharply sounded at least 60 rods before a highway crossing is reached, and after the whistle is sounded the bell is to be kept ringing until the crossing is passed, and in case of a failure so to do, the company is liable for all damages sustained by any person by reason of the neglect in not giving such warning of the approach of the train. Under this statute it is the duty of the company to sound the whistle and ring the bell, as provided in the statute, at all highway crossings. In addition thereto, the company may be required to take further precautions to give timely warning of the approach of its trains, if, as I have already said to you, the circumstances are such that the sounding of the whistle and ringing of the bell, as provided for in the statute, would not alone be sufficient to give timely warning of the approach of the train.

On the other hand, persons who are about to cross a railroad track are bound, on their part, to exercise ordinary care and diligence to ascertain whether a train is approaching, and the precaution to be taken by them will vary according to circumstances. They know that the crossing is a place of danger; that a train may come by at any moment; and they are bound to make a vigilant use of their senses of sight and hearing in order to ascertain if a train is approaching. If the nature and surroundings of the crossing are such that an approaching train cannot be readily seen or heard, this fact calls for the exercise of greater watchfulness and to taking of greater precaution on part of travelers who are about to cross the track in a wagon. It is the duty of the traveler to use proper care to ascertain whether he can safely pass upon and over the railway track. He is not justified in attempting to pass over the track if a train is approaching the crossing at such a rate of speed as to render a collision possible. In order to ascertain whether he can with safety attempt to pass over the crossing it is his duty to exercise ordinary care and diligence to ascertain whether a train is or is not approaching; and if he fails to do so, and is injured in consequence thereof, he cannot recover therefor, even though the company may also have been guilty of negligence on its part.

In the case now on trial it is not questioned that on the second day of November, 1884, one David W. Whitmer, with his wife, Martha J. Whitmer, his son, Floyd Whitmer, and daughter, Matie Whitmer, was passing in a wagon along the public highway which intersects or crosses the railway track of the defendant at a point about

one mile east of the station of Elwood, in Clinton county, in this state, and that while upon the crossing a collision occurred with a train passing over defendant's road, which collision resulted in the death of said Martha J., Floyd, and Matie Whitmer.

The first and principal questions upon which the parties are at issue, and which you are required to determine, are—*First,* was said collision caused by negligence on part of the defendant company, or of its employes in charge of said train? And, *second,* did the parties in said wagon, by negligence on their part, cause, or aid in causing, said collision?

Upon part of plaintiff it is claimed that the collision was wholly due to negligence on part of the defendant, and its employes in charge of said train; that the train was being run at a high and dangerous rate of speed; that the whistle was not sharply sounded twice, at a distance of 60 rods or more from said crossing, nor was the bell kept ringing from the time the whistle should have been sounded until the crossing was reached; that no sufficient warning of the approach of the train was given; that, owing to a curve in the railway track, persons operating trains thereon cannot see the road-crossing at a distance greater than 300 yards, and that by reason of a growth of weeds and briers upon the side of the track and road, the view of the track and road was obstructed; that in view of the character of the crossing, and the surroundings thereof, proper precautions were not taken by the defendant and its employes to give reasonable and timely warning of the approach of said train; and that, in consequence thereof, the collision occurred, without fault upon part of persons in the wagon. On part of the defendant the several allegations of negligence made against it are denied, and it is further claimed that the collision was caused, in whole or in part, by the negligence of the persons in said wagon, in that the said wagon was driven upon said crossing right in the way of the passing train, without taking proper precautions to ascertain whether a train was approaching, and whether the wagon could with safety be driven upon and over the railway track.

Upon the question whether the collision was caused by negligence on part of the defendant or its employes, the burden of proof is upon the plaintiff, who must satisfy you, by a fair preponderance of the evidence, that the collision was caused by negligence on part of defendant or its employes, before he can ask a verdict at your hands. If, under the evidence in the case, you find that when the train was approaching the crossing where the collision occurred, the whistle upon the locomotive was not sharply sounded twice, when at a distance of 60 rods or more from the crossing, and that the bell was not rung continuously from the place where the whistle should have been sounded, up to the time the crossing was reached; or if you find that either one of these requirements was omitted, and that by reason of the neglect so to do the collision was caused,—then you would

be justified in finding that the charge of negligence against defendant had been made out; for, as I have already said to you, the statute of Iowa expressly provides that the company shall be liable to any one who is injured through the failure to give the signals as required by the statute. If, however, you find that the whistle was sounded, and the bell was rung, as required by the statute, then you cannot find that the company was negligent, unless you are further satisfied by a fair preponderance of the evidence that, under the circumstances of the case, and in the exercise of ordinary care and diligence, the defendant should have taken other and greater precautions to give timely and reasonable warning of the coming of the train, and failed to do so, and by reason of such failure the collision was caused.

Now, gentlemen, you have before you the evidence adduced by both parties, tending to show the speed at which the train approached the crossing, and also the evidence tending to show the nature of the crossing, the respective heights of the railway track and the highway, the surroundings of the crossing as they were when the accident occurred, and what the opportunities were for seeing and hearing the approach of a train upon the railway, and of a wagon upon the highway, and it is for you, under the evidence, to determine what the facts in these particulars were at the time of the collision, and, having determined these, it is then for you to determine whether the defendant and its employes, in view of the facts as you find they then existed, exercised ordinary care and diligence in giving such timely and reasonable warning of the coming of the train as would enable teams and wagons upon the highway to avoid a collision, if those in charge thereof exercised due care and watchfulness upon their part. If, under the evidence in the case, you find that the defendant and its employes failed to give such reasonable and timely warning of the coming of the train as the circumstances required, in the exercise of proper care on part of defendant, and that by reason thereof the collision occurred, then you should find that the charge of negligence against defendant was made out; but, on the other hand, if you are not satisfied by a fair preponderance of the evidence that the defendant or its employes in charge of said train did fail to give reasonable and timely warning of the coming of the train when approaching said crossing, then plaintiff has failed to sustain the charge of negligence against the company, and in that event your verdict must be for the defendant. If, however, you find from the evidence that the defendant was negligent in not giving reasonable and timely warning of the approach of said train, then you will determine whether the person or persons in charge of said wagon were or were not guilty of negligence which aided in causing the collision. If, from the evidence, you find that the negligence of the person or persons in charge of said wagon aided in causing the accident, then the plaintiff cannot recover. If a person who is driving a wagon and team, and, as such driver, has control over the

movements of the wagon, fails to exercise proper care, skill, or watchfulness, and thereby causes or aids in causing an accident, whereby the occupants of the wagon are injured, such negligence on part of the driver is in law deemed to be the negligence also of the occupants, and affects or defeats their right of recovery the same as it does the right of the driver.

The evidence shows, without contradiction, that David Whitmer, the husband of one, and father of two, of the parties killed, was driving the wagon at the time of the accident; and the question, therefore, for determination is whether or not he exercised due and proper care and watchfulness in approaching and attempting to pass over the railway track at the place where the accident occurred. If you find that he did not exercise proper care, but, on the contrary, by his own negligence, aided in causing the accident, then such negligence on his part, as the person in charge of said wagon, will defeat a recovery in any one of these actions. As I have already said to you, it is the duty of every person driving a wagon and team, when approaching a railroad crossing for the purpose of passing over the same, to exercise ordinary care and watchfulness in ascertaining whether a train is or is not approaching, and whether he can safely pass over the railway track; and in so doing he is required to be watchful and vigilant in the use of his senses of sight and hearing. If the highway approaches the crossing in such a manner, and in the midst of such surroundings, that the view of the track is obscured, and it is rendered more difficult to see or hear an approaching train, or the signals therefrom, if given, by the whistle or bell, then the traveler upon the highway, knowing these facts, should use the care and caution commensurate to the increased danger caused thereby. The greater the risk caused by the nature of the approach to the crossing, the greater the watchfulness and precautions that should be taken by the traveler in ascertaining that the way is clear, and that he may with safety undertake to pass over the track. If he fails to exercise the watchfulness and to take the precautions which he should do in the exercise of ordinary care and diligence, in view of his surroundings at the time, and he passes upon the track, and a collision occurs, he cannot recover from the railway company for the injuries he may receive, even though the company is also in fault and guilty of negligence.

You have before you, gentlemen, the evidence showing the nature of the crossing, and the approach thereto; its surroundings at the time of the accident; the opportunities afforded to, or difficulties in the way of, persons driving wagons upon the highway in ascertaining whether a crossing could or could not be safely made; what the obstructions were, if any, tending to prevent those upon the wagon from seeing or hearing an approaching train, or the signals therefrom, if given; and you have also the evidence showing the manner in which David Whitmer and family approached said crossing in said wagon;

and it is for you to say, under the evidence, whether or not said David Whitmer exercised the vigilance and watchfulness and took the precautions which, in the exercise of ordinary care, he should have taken, in view of the circumstances then surrounding him, in order to ascertain whether or not a train was or was not then approaching, and whether he could or could not with safety pass upon the railway track. If you find that he did exercise all the vigilance and watchfulness and take all the precautions that he should have done under the circumstances, then upon this issue you should find for the plaintiff; but if, under the evidence, you find that said David Whitmer failed to exercise the watchfulness and vigilance and to take the precautions which he should have done under the circumstances, and drove said wagon upon the railway track, thereby bringing it into collision with the train, then he was guilty of such negligence as will defeat a recovery in any one of these actions, and your verdict must be for the defendant. To restate the legal propositions briefly: Unless you are satisfied from the evidence that the collision was caused by the negligence of the company or its employes, then your verdict must be for the defendant. If, however, you are satisfied from the evidence that the collision was caused by the negligence of the defendant or its employes, then your verdict should be for the plaintiff, unless you are satisfied from the evidence that the said David Whitmer, as the driver in charge of said wagon, by negligence on his part, aided in bringing about said collision, in which event your verdict must be for the defendant, even though you find that the defendant was also guilty of negligence.

If, then, gentlemen, under the instructions given you, as applied to the facts as you may find them from the evidence, you find for the defendant, you will so say by your verdict; but if you find for the plaintiff, you will then be required to determine the amount of damages to be awarded in each one of the cases submitted to you.

The amount of damages to which plaintiff is entitled, if you find the defendant liable, is such sum as will equal the pecuniary damage caused to the estate of the person killed by his or her death. The statute of Iowa, under which these actions are brought, does not permit you to consider or to award to the plaintiff damages for the anguish and suffering caused to the husband and father of the persons killed, or to their other relatives. The law limits the amount to be recovered to the pecuniary loss caused to the estate of the deceased person, and beyond this amount you cannot go. In estimating the amount of damages you will be required to consider each case separately.

In case No. 254, which is the one brought to recover damages for the death of Mrs. Martha Whitmer, you will take into consideration her age at the time of her death, and any other facts established by the evidence which may tend to throw light upon her ability to earn money, and, exercising your best judgment thereon, fix the damages at such sum as you deem will fairly represent the pecuniary loss

caused to the estate of said Mrs. Whitmer by her death, bearing in mind that the sum you may thus award is to be paid now,—is in one sum,—and will be thereby freed from the uncertainties that surround and affect business life and affairs.

The other persons killed, as the evidence shows, were children of three years, and about 18 months, old. The boy, Floyd, would have become of full age when 21 years old, and the girl, Matie, when 18 years old. Until these children should reach their majority, the father, under the laws of the state, would be liable for their maintenance, and be entitled to their earnings and the benefit of their labor; and hence the proceeds thereof would not belong to their estate, and would not pass to their administrator. In these actions, therefore, the plaintiff, who sues as administrator of their estates, is not entitled to recover for damages accruing prior to the time at which the child would have attained his or her majority. You are therefore to determine what sum should be awarded in each of these cases, as fairly representing the pecuniary loss to the estate, in that the said estate has been deprived by the death of the party of the accumulations or earnings net, after allowing for all expenses, which such party might have accumulated after reaching his or her full age. From the very nature of the case it is impossible that evidence could be adduced showing the amount of such loss. It is impossible to know whether these children, or either of them, would reach the years of their majority. It might be that, had it not been for this accident, and their consequent deaths, they would have reached a full old age. It is impossible to know whether these children, or either of them, had they lived, would, after their majority, ever have earned or accumulated any estate or property whatever. It might be that they would have been successful in that regard, and have accumulated estates of greater or less value. You know, gentlemen, from your common observation and experience, the uncertainties and contingencies that attend human life and the accumulation of property, and due weight should be given thereto in estimating the damages to be awarded in cases of this character. The amount to be awarded has to be and is intrusted to the sound common sense and good judgment of the jury. The amount you award becomes a sum fixed and certain, and when awarded and paid is freed from the uncertainties and contingencies I have named. In these cases, Nos. 255 and 256, you will therefore, if you find for the plaintiff, award in each case such reasonable sum as in your best judgment may be considered to fairly represent the pecuniary loss to the estates, in that said estates have, by the death of said Floyd and Matie Whitmer, been deprived of their possible accumulations after reaching the ages of 21 and 18 years, respectively.

*A Juror.* I failed to understand from the instruction of the law, and would like to know, whether there is any statute that specifies how fast or how slow a train shall go in approaching a crossing.

*Court.* There is no statute law that I am aware of, and no principle of law that the court can lay down to you. The railway company, so far as the law is concerned, as I understand it, are justified in running at any—at such speed as they may deem best in the transaction of their business. They may run a train, if they can in safety, at 50 or 60 miles an hour, or 100 miles an hour if that speed can be reached; but at whatever speed they do run, they must give timely and reasonable warning of the approach of the train, and the increased speed bears upon that question. A warning which would be sufficient if the train was running 5 miles an hour might not be sufficient if it was running 25 or 30 miles an hour.

In the absence of a statute, damages cannot be recovered by a father for negligently causing the death of his minor son. Sullivan v. Union Pac. R. Co., 2 Fed. Rep. 447.

In an action for negligently causing the death of a minor, the proper measure of damages, where the father is the next of kin, is the probable value of the services of the deceased from the time of his death until his majority, less the expense of his maintenance during the same time. Mayhew v. Burns, (Ind.) 2 N. E. Rep. 793; Stafford v. Rubens, (Ill.) 3 N. E. Rep. 568; Pennsylvania Co. v. Lilly, 73 Ind. 252; City of Chicago v. Scholten, 75 Ill. 468; Rockford, R. I. & St. L. R. Co. v. Delaney, 82 Ill. 198; and the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life even beyond majority. Johnson v. Chicago & N. W. R. Co., (Wis.) 25 N. W. Rep. 223.

But where the next of kin are collateral kindred of the deceased, and have not received pecuniary aid from him, they will be entitled to nominal damages only. City of Chicago v. Scholten, 75 Ill. 468.