LINSS v. CHESAPEAKE & O. RY. CO. (two cases).

(Circuit Court, D. Kentucky.  February, 1899.)

Nos. 2,019 and 2,020.

1. NEW TRIAL—INADEQUACY OF DAMAGES AWARDED.
    In an action for death by wrongful act, where two juries, under proper instructions, have awarded the same amount of damages, their verdict will not be set aside on the ground that such amount is inadequate.

2. DEATH BY WRONGFUL ACT—MEASURE OF DAMAGES—INFANTS.
    Under the statute of Kentucky (Ky. St. § 6) giving a right of action for death caused by the negligence or wrongful act of another to the personal representative of the person killed, and providing that the amount recovered shall be distributed among the kindred of the decedent in the order therein named, and in certain events shall become a part of his estate for the payment of debts, the measure of damages in such an action, as established by the state decisions, is the loss to the estate of the decedent caused by the destruction of his earning power, excluding the value of his life to any particular relative who is a beneficiary.    In

case of an infant, the value of his earning power during minority is not to be taken into account; nor is the expense of his maintenance and education during that time to be deducted, though the administrator suing is a parent, and one of the beneficiaries.

These were actions by Charles Linss, as administrator of his two infant daughters, deceased, against the Chesapeake & Ohio Railway Company, to recover, under the provisions of the Kentucky statute, for the death of his intestates by reason of the alleged negligence or wrongful acts of defendant.    On motion for new trial.

William Goebel and Thomas B. Phister, for plaintiff.
Simrall & Galvin, for defendant.

BARR, District Judge.    These cases are suits brought for the killing of two sisters, who were the daughters of the administrator, Charles Linss.    The suits were first tried at the May term by a jury sworn in both cases.    The verdict was then $1,000 in each case.    A motion was made by the plaintiff for a new trial because of the smallness of the verdict.    The court granted the new trial, for the reasons stated in the opinion then filed.    The cases were again tried at the December term of this court, and, as in the other trial, by one jury, and the same verdict returned.    The plaintiff again moved the court for a new trial, chiefly upon the grounds of the inadequacy of the amount of the verdict, and also that the instructions of the court as to the measure of damages were erroneous.

It is enough to state that the first ground cannot be sustained, since the jurors are the judges of issues of fact, under the guidance of the court; and as two juries, both of whom seem to be quite intelligent and impartial, have given the same verdict, the court cannot usurp the powers of the jury, and insist upon a verdict which it might, under the evidence, conclude was proper.

The particular ground for error of law committed by the court is, as I understand, that part of the charge which directed the jury, in estimating the value of the earning power of the deceased girls, both of whom were school girls, one about 12 and the other about 13 years of age, not to consider either their earning power until they became 21 years of age, or the cost of their maintenance or education during that time, but to estimate their earning power commencing when they became of age and entitled to their earnings, considering their physical condition and expectancy of life; that from that earning power there might be deducted the necessary expenses of living.    I have not before me the charge, but this is the substance of it, as I remember it. The learned counsel for the plaintiff insist that thus instructing the jury to leave out of the estimate the probable earnings of the girls who were killed, until they became of age, was error, and claim that the court of appeals, in the construction of the Kentucky law which creates the rights and the remedy for the death of the person caused by negligence, construed it differently, and that this construction is binding upon this court.

The Kentucky constitution provides that:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be re-

covered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person."

The Kentucky legislature passed an act, under this provision of the constitution, known as section 6, Ky. St., in which it provides that the action shall be brought by the personal representative, and declares to whom the recovery shall go. This section provides that:

"The amount recovered, less funeral expenses and the costs of administration, and such costs about the recovery, including attorney's fees, as are not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased," in the order named in the section.

Under this section the father and mother would have half of the recovery. And it also provides that, if the decedent does not leave the designated kin, after the payment of the debts of the decedent the remainder, if any, shall pass to his kindred as directed by the general law of descent and distribution. The Kentucky constitution also provides, in another section, that the general assembly shall have no power to limit the amount to be recovered for injuries resulting in death. There had been on the statute books of Kentucky from 1854 to the adoption of the present constitution, in 1891, legislation which created a right to recover for death caused by negligence. These statutes were somewhat varied in terms, and had given rise to a great deal of discussion in the courts, and some conflict of decision. Under one of the sections of the law it was decided that where the decedent had no widow or children there could be no recovery; and under another section of the law, that there was no such limitation. This was upon the theory that in the one case the recovery went to the estate of the decedent, and in the other that it went to the widow and children, either one or both; hence the constitution made the provision heretofore referred to. It became necessary, therefore, for the courts to establish some measure in estimating the damages arising from the death of a decedent; and, as we understand, it is now the settled law that the measure of damages for the death of a decedent is the earning power of the decedent, and that, in estimating this earning power, the relationship of husband and wife, children and parent, or other kindredship of the beneficiaries to the decedent, are not to be considered. It is true that this measure of damages has been dissented from by Judge Guffy, one of the judges of the court of appeals (see Railroad Co. v. Eakin [decided April, 1898] 47 S. W. 872); and it is also true that the language which the court will permit to be used to the jury is in much obscurity. In the case of Railway Co. v. Lang (decided in December, 1896) 38 S. W. 503, the court of appeals' attention was sharply drawn to the question of the measure of damages, and what language should be used by the court to the jury. The court delivered its opinion, and filed a modified opinion later (40 S. W. 451), and subsequently a response to the petition to modify the opinion (41 S. W. 271). In that case the instruction given was:

"If the jury find for the plaintiff, they will fix the damages at a fair equivalent in money for the power of the deceased to earn money lost by reason of the destruction of his life, not exceeding twenty-five thousand dollars [the amount claimed in the petition]; and in fixing the damages the jury

will take into consideration the age of the decedent at the time of his death, his earning capacity, and the probable duration of his life."

The court seemed to object to this language, though not to the substance of the instruction, and said, among other things:

"This court has always approved instructions as to the measure of damages that authorized the jury to consider the age of the intestate, his capacity to earn money, and the probable duration of his life. The entire question, without any other specific instruction on the subject of the power to earn money, has been left with the jury, with results that are less harmful to the wrongdoer, and, we think, more satisfactory to the court, than the rule contended for by learned counsel."

This language of the court just quoted was approved in the case of Railroad Co. v. Kelly's Adm'x (Ky.; decided in January, 1897) 38 S. W. 852, and in the syllabus the rule is stated thus:

"The measure of compensatory damages for the death of plaintiff's intestate is such sum as will reasonably compensate his estate for the destruction of his power to earn money."

The question again came up for consideration in the case of Railroad Co. v. Eakin (Ky.; decided in April, 1898) reported in 47 S. W. 872. In that case Judge Guffy dissented from the majority of the court, and insisted that the measure of damages was not the earning power of the decedent whose life was destroyed. But we think, taking all the decisions of the court of appeals, that the settled doctrine is now that the earning power of the decedent is the measure of damages, when the suit is for destroying his life; and, that being the rule, the value of that life to relatives or dependents, or the number of dependents, is not an element to be considered in estimating damages.

Section 6 of the Kentucky Statutes is intended to embrace the whole law upon the subject of the statutory right granted for the death caused by negligence or wrongful acts of others, either persons or corporations, and to do away with distinctions which existed prior to the new constitution; and that statute contemplates that the recovery is to go to certain beneficiaries as therein declared, and in certain events to become part of the estate to pay the debts of the decedent. So that, broadly speaking, the statutory right of action is given to the administrator of a decedent to recover damages for the death of his intestate or testator, which is to be considered as the estate of that decedent, and to be distributed according to the act, and is intended to exclude the particular value of the life destroyed to any particular beneficiary. In this view, it seems to us that it logically follows that the personal representative of a decedent who loses his life by the negligence or wrongful act of another should recover for the death what the life would have been worth in earning power to the decedent,—not to any special person, who may be the mother or father, child, husband, wife, or dependent, but generally such an earning power as the decedent himself had, and such as he might, and probably would, have had, had he lived. And that power of earning money which, if exercised, would not have belonged to the decedent, should not be estimated; nor, on the other hand, in the case of an infant, should the money necessary to support the infant, or prepare him to earn money, which would not go to the infant himself, be deducted, in fixing the value of his earning power. It seems equitable, therefore, that as the right of action is given to the

personal representative of a decedent for the benefit of certain parties, by reason of their relationship to that decedent whose life is lost, and in certain events to pay his debts, it should not be extended to earnings which would not have gone to the decedent if he had lived. It is quite true that a parent, who is entitled to the earnings of, and who is under a legal and moral obligation to support and educate, the infant, cannot recover, as such, the earnings of the infant. But this is because the right to the earnings ceases with the death, independent of the statute, and the right, whatever it may be, must be granted by a statute. We think this would be also true if an apprentice boy had been apprenticed under an agreement that his earnings should go to his master,—that such earnings should not be estimated in the recovery of the administrator of the apprentice boy, for this same reason.

It is, however, insisted by counsel that the reasoning of the court in the case of Railroad Co. v. McElwain, 98 Ky. 700, 34 S. W. 236, held a contrary idea, and that the case of Harris v. Lumber Co. (Ky.) 43 S. W. 462, 45 S. W. 94, is conclusive of the opposite view. In the McElwain Case the administrator, who was the decedent's husband, sued under the Kentucky statute passed prior to the present constitution, and recovered for the death of his wife, as administrator, in the sum of $5,000. He also instituted a suit for damages for the loss of her society from the date of the injury to her death. The court held that he could not maintain the last action. The court say, in concluding an elaborate opinion:

"We conclude that as the statute gives the personal representative the right to maintain the action for the loss of life of the wife, and the consequences of the negligent act producing the injury, the husband cannot maintain the action for the loss of her society. The legislative intent was to increase the elements of damage flowing from the acts or negligence producing death. It was not the intention of the legislature to multiply actions. The husband must accept the benefits which the statute secures him in lieu of those he possessed at common law."

This was following out the decisions which held that, when an administrator sued for the death of his decedent, he could not also sue for the pain and suffering and mental anguish of the decedent prior to his death, but must elect, although the last was a common-law action, and survived to the administrator by another statute.

The report of the case of Harris v. Lumber Co. does not show clearly the facts in the case. In that case the father of Harris, a youth of 18 years of age, who was killed at a sawmill by some fellow servants, sued the corporation for the death, and the lower court sustained a demurrer to the petition. The case went to the court of appeals, and the court of appeals affirmed it. We understand this case merely decided that the father could not recover at all for the loss of the wages of his son, as his right to them ceased with the child's death. The court say, in response to a petition for rehearing:

"In the petition for rehearing counsel claims that the petition did not seek a recovery for the injury resulting in the death of the son of the plaintiff. We understand the plaintiff to seek a recovery therefor; but if part of the cause of action alleged is, as claimed by counsel, for the loss of the services of the son from the date of his death until he would have attained his majority,—something over two years and five months,—then it is, in effect, an effort to recover for the injury resulting in the death of the son. The right

of the father to the services of his son ceased and determined at his death. Eden v. Railroad Co., 14 B. Mon. 204; Railroad Co. v. McElwain, 98 Ky. 700, 34 S. W. 236."

Again the court say:

"If the petition showed what services the plaintiff's minor son had rendered the appellee before his death, and their value, then the plaintiff would have shown a cause of action against the appellee for the value of such services. In no event has the plaintiff shown any right to recover against the appellee."

This simply means that if there were any wages due the son at the time of his death from the employer, the lumber company, the plaintiff, as father, might recover it, but nothing more. We think, therefore, that neither of these cases is distinctly in point, and that the question under consideration is undecided.

In considering the case upon motion for a new trial, we were in some doubt as to the correctness of the instruction which excluded from that jury the probable earnings of the girls between the time of their death and when they became of age, as the administrator was one of the beneficiaries; but, without being able to find much authority upon the subject, we upon the second trial concluded that, logically, both the expenses of caring for and educating the infants, and their wages, should be excluded. This is the view taken of an Iowa statute by the circuit court in the case of Morris v. Railway Co., 26 Fed. 22. We therefore conclude that the motion for new trial in each case must be overruled, and it is so ordered.