CASE 35—PETITION ORDINARY—DECEMBER 3.

# Chesapeake & Ohio R'y. Co. v. Lang's Admr.

APPEAL FROM KENTON CIRCUIT COURT.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE.—It is not contributory negligence for a passenger on a crowded excursion train, to stand upon the platform, although there may have been standing room in the cars, and the company is liable for any injury which he may sustain while so standing, which was caused by its negligence, even though he would not have been injured had he been on the inside of the cars.

2. MEASURE OF DAMAGES.—In an action by a personal representative to recover compensation in damages for the wrongful killing of his intestate, the measure of damages is such sum as would fairly compensate the estate of the deceased for the destruction of his earning power, and the jury may take into consideration all the facts and circumstances in the case in estimating the compensatory damages.

SIMRALL & GALVIN FOR APPELLANT.

1. While it is not *per se* negligence to ride upon the platform of a car, but to voluntarily and unnecessarily stand or ride upon the platform, if there is standing room within the car, is such negligence as will prevent a recovery for an injury received while thereon. (Beach on Contributory Negligence, sec. 54; Patterson on Railway Accident Law; Hutchinson on Carriers, sec. 272; Pierce on Railroads, pp. 316-17.)

2. The measure of compensatory damages where the life of one is lost through the negligence of another, is the power of the deceased at the time of his death to earn money for his estate, and the balance of his earnings after his support is deducted therefrom, is the value of his life to his estate. (Ky. Cen. R. Co. v. Gastineau, 83 Ky., 119; L., C. & St. L. R. Co. v. Case's Adm'r, 9 Bush, 728.)

3. It was reversible error for the court to allow the plaintiff to show that the switch had been changed between the date of the accident and the trial. The purpose of this evidence was to impress

upon the minds of the jury, that because of the change of the switch after the accident, it must have been improperly constructed before the accident. (Standard Oil Co. v. Tierney, 92 Ky., 378; C. & P. S. R. Co. v. Hawkins, 144 U. S., 202.)

4. The damages awarded, under the circumstances of this case, were excessive.

WM. GOEBEL FOR APPELLEE.

1. It is not negligence for a passenger to be upon a platform of a car unless he is there voluntarily and unnecessarily. In this case the deceased was on the platform because of the crowded conditions inside the cars, having gone through all the cars in search of a seat. (Ky. Cen. R. Co. v. Thomas, Adm'r, 79 Ky., 160.)

2. Upon the question as to whether Lang was ordered to leave the platform, the evidence is conflicting, and the jury determined that issue in appellee's favor.

3. If the measure of compensatory damages should be the sum which the deceased probably would have earned during his life less the amount which he would probably have expended in living, it would follow that in every action for the death of a man who spent as much as, or more than, he earned, no verdict for damages could be found, or at most only one for nominal damages; and in no case could a verdict be rendered or sustained for the death of a child or other person who had not yet begun to earn money. (L. & N. R. Co. v. Morris, 14 Ky. L. R., 466.)

4. If the measure of damages is alone the decedent's power to earn money at the time of his death, no damages could ever be recovered for the death of a child which had not at the time of its death arrived at the money-earning age. The rule is that the jury must consider what the earning power of the deceased would have been during the entire term of his probable duration of life.

C. B. SIMRALL IN PETITION FOR REHEARING.

1. In the consideration of the question of damages, resulting from a negligent killing, the jury must consider the age of the deceased, his capacity for earning money, his business occupations, his probable duration of life, his habits as to industry and sobriety, his habits of economy, and the necessary expenditures he

would have to make upon himself in order to keep and maintain his life while he is earning money; and the jury may consider what sum, properly invested, would compensate the beneficiary for the death of the person killed. (Shearman & Redfield on Negligence, 3 ed., sec. 613; Armsworth v. Southeastern Ry. Co., 11 Gur., 758; Blake v. Midland R. Co., 18 Q. B., 93; Duckworth v. Johnson, 4 H. & N., 653; Franklin v. S. E. R. Co., 3 H & N., 211; Dalton v. S. E. R. Co., 4 C B. (N. S.), 396; Sykes v. N. E. R. Co., 44 Law Journal, 191; Holleran v. Bagnell, 6 Law Rep., Ireland, C. P. Div., 333; Harrison v. L. & N. & W. R. Co., 1 Cohade & Ellis (C. B.), 540; Fordyce v. McCants, 51 Ark., 509; A., T. & S. F. R. Co. v. Brown, 26 Kan., 443; C. & P. Coal & Mining Co. v. Limb, 28 Pac., 181; Richmond v. Chicago, &c., R. Co., 49 N. W. Rep., 621; Winnt v. International & G. N. Ry. Co., 74 Texas, 32; Lehigh Iron Co. v. Rupp, 100 Pa. St., 95; Mason v. Bertram, 18 Ont., 1; Jordan's Adm'r v. C., N. O. & T. P. Ry Co., 89 Ky., 40; Wheelan v. Chicago, &c., R. Co., 85 Iowa, 167; Houston, &c., R. Co. v. Cowser, 57 Tex., 293; James v. R. & D. R. Co., 92 Ala., 235; L. & N. R. Co. v. Graham's Adm'r, 17 Ky. L. R., 1230; Ga. Cen. R. Co. v. Rouse, 77 Ga., 408; Penn. R. v. Butler, 57 Penn. St., 335; A. & W. R. Co. v. Newton, 85 Ga., 528; Chicago, &c., R. Co. v. Bayfield, 37 Mich., 204; St. Louis v. F. R. Co., 56 Fed. Rep., 994; Kelly v. Cen. R. Co., 48 Fed., 663; St. Louis I. M. & S. R. Co. v. Needham, 52 Fed. Rep., 371; Carlson v. Oregon, 28 Pac. Rep., 499; Tilfer v. Nor. R. Co., 1 Vroom (N. J.), 188; L. & N. R. Co. v. Orr, 91 Ala., 548; Rose v. DesMoines Ry. Co., 39 Iowa, 246.)

W. H. JACKSON OF COUNSEL ON SAME SIDE.

WM. GOEBEL IN REPLY TO PETITION FOR REHEARING.

1. The verdict in this case, and many other verdicts for damages for death now pending upon appeals in other cases in this court, were rendered in pursuance of the well-settled rule of statutory construction, many times enunciated by this court in actions for the recovery of damages for death. All the statutes now authorizing the recovery of damages for death, as well as the provision of the present Constitution of Kentucky upon the subject (sec. 241), were all enacted in view of the settled rule of this court, fixing the measure of damages for death; and that rule is, under well settled canons of statutory construction, as much a

part of those statutes and that constitutional provision, as if
it was therein written in express words.

WM. GOEBEL IN PETITION FOR MODIFICATION OF THE COURT'S RE-
SPONSE TO THE PETITION FOR REHEARING.

1. The modifying opinion of the court leaves the question uncertain
as to what is the correct measure of damages in such cases—that
is, as to whether it is intended to change the measure of recovery
of damages for death from the standard that has always here-
tofore obtained in Kentucky, to the sum that the *net earnings* of
the deceased would have produced if he had lived.     The rule
should be explicitly stated.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Albert D. Lang, while a passenger on the train of
the appellant, lost his life by reason of a collision be-
tween the train upon which he was being carried and a
freight train or freight cars that were standing upon a
side track into which the switch opened. The appellee's
intestate was standing on the platform of the front car
and the collision caused him to fall from his position, re-
receiving such injuries as resulted in his death.

One of the grounds of defense was that the decedent
lost his life by reason of his own negligence in placing
himself where danger was imminent and but for which
he would not have been injured.   The testimony shows
that those inside the cars were not injured in any way,
while several on the platform were wounded and the
appellee's intestate killed.

The train was an excursion train and much crowded,
and while the weight of the testimony conduced to
show there was standing room inside the cars, there was
much testimony to the effect that neither seats or stand-

ing room could be found in either car, there being several attached to the engine, and the testimony in this regard being so conflicting, it is not the subject of further inquiry here, and it needs but little proof to convince one of the existence of crowded cars from cheap excursion rates.   The instruction, therefore, asked for the defendant, that if there was room in the cars, or any of them, upon which plaintiff's intestate was riding, for him to be seated or standing room, and if he had been on the insidewould not have been injured was properly refused, nor are we prepared to adjudge that the presence of one on the platform who is injured by such neglect as is shown in this case, constitutes such contributory neglect as prevents a recovery.   While the doctrine is, that where a passenger voluntarily and unnecessarily places himself in a position of danger, and his own neglect causes the injury, and but for his folly the injury would not have happened no recovery can be had, it has but little if any application to the facts of this case. It is not *per se* negligence to be upon the platform, says Mr. Beach in his work on contributory neglect, and in cases where by cheap rates persons are invited upon and then passage accepted to travel on these excursion trains it is no defense on the part of the company to say that you might have stood in the car and not on the platform and therefore no responsibility exists. The tender was in front of the engine and the view of the approach to the switch obstructed by it, and if not, it is manifest that with any sort of care this danger could have been avoided.   The jury, however, was told

that if from the testimony there was room in any car for the intestate and that he could have entered the same, and that he remained on the platform where he was injured without the knowledge of the conductor, or against his objection, or that of any agent of the company the verdict should be for the defendant. This instruction was more favorable to the defense than it should have been. Upon the facts of this record the entire testimony shows the cars were greatly crowded—young ladies seated upon the coal box, with the platforms filled with passengers, so much so as to prevent those on the ground from entering the cars, and when such inducements are given by which cars are filled inside and out with passengers, it is doubtful whether the position of the passenger on the train, unless so reckless as to knowingly placing himself in imminent peril, should be held to be contributory neglect. It is further contended that the court erred in its instructions as to the measure of damages. This action is by the personal representative to recover compensation in damages for the wrongful killing of his intestate. It is therefore said the loss is "the amount that would probably have been realized from the deceased's power to earn money had his life not been terminated by the negligent act of the defendant, and it is his probable net earnings to be ascertained by deducting from the gross amount the cost of his living that constitutes the damages to which his representative is entitled, that is, if one earned $500 a year and his expenses are $250, the difference, $250, would be the value of his life to his estate, or if he

earned $10,000 a year and his expenses were one thou-
sand he could recover $9,000, and if living the period
that this young man would probably have lived, the ver-
dict and judgment would have made the company bank-
rupt.   This measure of damages has been adopted by
some of the courts of this country, but has never been
followed in this court.   The loss sustained is the power
of   the   intestate   to   earn   money,   etc.,   and   if
the rule contended for is sanctioned then it follows that
the representative of one who has been wrongfully or
negligently killed can recover no compensation, if his
necessary or reasonable expenditures exceed his earn-
ings, and the value of human life made to depend upon
the money the injured party could have made.   One so
young as not to be able to labor could recover nothing
if as contended by the appellant his ability or rather
power to earn money at the time of his death is alone to
be considered.

This young man at the time of the accident was eigh-
teen years of age earning as much as one dollar per day,
with, according to the mortality tables, the probability
of living many years, and it is the earning power of the
deceased extended to the probable duration of his life·
that is the measure of damages.   This court has always
approved instructions as to the measure of damages
that authorized the jury to consider the age of the in-
testate, his capacity to earn money and the probable
duration of his life.   The entire question, without any
other specific instruction on the subject of the power to
earn money has been left with the jury with results that

are less harmful to the wrong doer, and, we think, more satisfactory to the court than the rule contended for by learned counsel.    While the question as to the measure of damages has been often made before this court, there is only one case (outside of the general instruction as to compensation) in which it has been decided, and that is the L. & N. R. R. Co. v. Morris, 14 Ky Law Rep., the court there declined to require the jury to discount the living expenses of the deceased, as it would be "embarking upon a sea of speculation almost without limit."    We are not disposed to modify in any way the rule in regard to the measure of damages so long adopted by this court, and must therefore affirm the judgment.

The court delivered the following response to the petition for re-hearing, and modified opinion on May 1st, 1897:

The principal contention of the petition for re-hearing in this case is that the measure of compensatory damages was not correctly given to the jury.    The instruction given was "If the jury find for the plaintiff, they will fix the damages at a fair equivalent in money, for the power of the deceased to earn money lost by reason of the destruction of his life, not exceeding twenty-five thousand dollars; and in fixing the damages, the jury will take into consideration the age of the decedent at the time of his death, his earning capacity, and the probable duration of his life."

Under this instruction as this court held in the case of Louisville & Nashvile R. R. Co. v. Kelly's Adm'x., 38

Federal Reporter 855 the jury were not only entitled to consider the life expectancy of the deceased according to the life tables, but other circumstances affecting its probable duration, together with what it would reasonably cost him for necessary living expenses, but we do not think that should have been included in the instruction to the jury. It would in our judgment, have been a plain departure from a well settled precedent in instructions given to juries in such cases during a long period of time in which a series of statutes on this subject have been adopted, and in the absence of legislation on the subject we are not disposed to depart from a procedure so long adhered to by this court. We may add, however, that the conclusion of the instruction complained of, namely, that "in fixing the damages, the jury will take into consideration the age of the decedent at the time of his death, his earning capacity, and the probable duration of his life," might well have been omitted as tending to call undue attention to particular facts selected out of the body of fact to be considered by the jury in ascertaining from the evidence the sum that would reasonably and fairly compensate the estate of the deceased for the destruction of his power to earn money.

A great deal of objection has been made to that part of the opinion in this case which said "And it is the earning power of the deceased extended to the probable duration of his life that is the measure of damages." The court in that sentence, somewhat overstated what we regard to be the true legal proposition upon this

subject which has been given above. To the extent in-
dicated the opinion is modified.

Petition overruled.

The court delivered the following response to the pe-
tition for a modification of the response to the petition
for re-hearing on June 11th, 1897.

The petition for modification of the opinion suggests
that there is doubt as to the meaning of the court in
its statement of the measure of recovery in an action
for damages for death caused by negligence, the doubt
being as to whether the measure of recovery was the
gross earnings of the deceased, or the net earnings, con-
tinued for the probable duration of his life.

Our opinion was, that the measure of recovery was
such sum as would fairly compensate the estate of the
deceased for the destruction of his earning power. This
was substantially the form in which the instruction
was given in this case, and in the case of Louisville &
Nashville R. R. Co. v. Kelly's Adm'x recently decided.

Had the question of the sufficiency of the instruction
been a new one, we should have held that the jury ought
to have been specifically instructed in estimating the
loss to the estate to take into consideration what would
have been the necessary and economical living expenses
of the deceased had he not been killed; but as the in-
struction which was given has been sanctioned by this
court many times, and inasmuch as that instruction
has been heretofore approved by this court seemed to
us to authorize the jury to take into consideration all
the facts and circumstances in the case in estimating

compensatory damages, we have concluded that it would be unwise to disturb the established procedure in giving instructions in such cases.

Wherefore, the petition for modification is overruled.