CASE 4—ACTION FOR NEGLIGENCE—MARCH 9.

## Louisville & Nashville R. R. Co. v. Creighton, Etc.
## Same v. Stock's Administrator.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. NEGLIGENCE QUESTION OF FACT.—It is a question of fact for the jury whether it is negligence on the part of an engineer running a train along a street of a populous city not to be constantly on the look-out for persons coming on the track; but the failure of the fireman or flagman so to be on the look-out is not negligence.

2. DAMAGES—EXCESSIVE.—A verdict for $17,500 compensatory damages to a woman thirty-five years old, who seems to be in possession of all her faculties and not especially disfigured, and whose capacity for attending to her household duties is to some extent impaired but not destroyed, is excessive; although it appears that the injuries complained of resulted in confin-

Vol. 106]      JANUARY TERM, 1899.      43

Lou. & Nash. R. R. Co. v. Creighton, &c.    Same v. Stock's Admr.

ing her to her bed for two months, and although it appears that she walked on crutches for some time and suffered much from hysteria and headache, and injured her head from which a possibility arises of danger of her mind being affected.

3. SAME.—A verdict for $10,500 damages for the loss of life of an infant between three and four years old is excessive.

WRIGHT & ANDERSON FOR THE APPELLANT.

In both cases counsel argued that the damages were excessive, appearing to have been given under the influence of passion and prejudice, and in support of the contention cited: L. & N. R. R. Co. v. Fox, 11 Bush, 495; Same v. Shivell's Admr., 13 Ky. Law Rep., 902; Same v. Foley, 15 Id., 18; Same v. Earle's Admr., 15 Id., 185; Same v. Popp, 16 Id., 369; Same v. Mitchell, 10 Id., 211; Same v. Moore, 7 Id., 646; Same v. Sheets, 11 Id., 781; Same v. McEwan, 17 Id., 406; Same v. Graham's Admr., 17 Id., 1230; Same v. Kingman, 18 Id., 82; Ky. Cent. R. R. Co. v. Smith, 14 Id., 456; Same v. McMurty, 3 Id., 625; Same v. Ryle, 13 Id., 862; Standard Oil Co. v. Tierney, 13 Id., 626; Same v. Same, 16 Id., 327; L. & N. R. R. Co. v. Minogue, 12 Id., 378; N. N. & M. V. R. R. Co. v. Campbell, 15 Id., 715; E. Tenn. Telephone Co. v. Simms' Admr., 18 Id., 762; Louisville Water Co. v. Upton, 18 Id., 326; Cincinnati & S. Cov. St. Ry. Co. v. Mc-Cleave (not yet published); C. & O. Ry. Co. v. Lang's Admr., 19 Ky. Law Rep., 65; L. & N. R. R. Co. v. Minogue, 12 Ky. Law Rep., 379; Jordan's Admr. v. Cin. N. O. & T. P. R. R. Co., 11 Ky. Law Rep., 204; Blake v. Midland R. R. Co., 18 Q. B., 93; L. & N. R. R. Co. v. Morris' Admr., 11 Ky. Law Rep., 698; L. & N. R. R. Co. v. Berry's Admr., 16 Ky. Law Rep., 722; Ky. Cent. R. R. Co. v. Gastineau's Admr., 7 Ky. Law Rep., 3; Holleran v. Bagnell, 6 Law Rep. Ireland (C. P. Div.), 333; Duckworth v. Johnson, 4 H. & N., 653; Dalton v. Southeastern Ry. Co., 93 Eng. Com. Law Rep., 296; Franklin v. Same, 3 Hurlestone's & Norman's Rep., 211.

W. S. PRYOR AND WM. GOEBEL FOR APPELLEES.

1. The instruction in the Creighton case, that if the life of the child was imperiled by defendant's negligence, then Mrs. Creighton had the right to make an attempt to rescue the child, and if in doing so she was injured, she could recover, provided that in making the attempt she used ordinary care, was prop-

44        KENTUCKY REPORTS.        [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c.    Same v. Stock's Admr.

erly given. Pennsylvania Co. v. Langendorf, 48 O. St., ——, 13 L. R. A., 190; Eckert v. Long Island R. Co., 43 N. Y., 502; Spooner v. Delaware, L. & W. R. Co., 115 N. Y., 22; Linnehan v. Sampson, 126 Mass., 506; Donahue v. R. R. Co., 83 Mo., 560; Shearman & Redfield on Negligence, sec. 85; Wharton on Negligence, sec. 314; Beach on Contributory Negligence, sec. 15.

2. The servants of the defendant in charge of the train had no right to assume that the child would not go upon the track in front of the engine. Shearman & Redfield on Negligence (5th ed.), sec. 481; Bishop Non-contract Law, sec. 1037; L. & N. R. R. Co. v. Popp, 96 Ky. 99.

3. Instruction "B" was not objected to, nor the ruling of the court giving same excepted to by the appellant, and no question as to its correctness can therefore be made or considered in this court. The affidavit of counsel that he objected to the instruction will not control the certificate of the judge that the instruction was not objected to. Garrard v. Ratcliffe, 83 Ky., 389; Patterson v. Com., 86 Ky., 324-5; Civil Code, sec. 337.

4. It results from the married woman's property act of 1894 that a right of action on account of any permanent impairment of the capability to work and earn money by a married woman, belongs to her and not to her husband. Jordan v. Middlesex R. R. Co., 138 Mass., 425; O. & M. Ry. Co. v. Casley, 107 Ind., 32; Harmon v. Old Colony R. R. Co. (Mass.), 30 L. R. A., 658.

5. The instruction as to the measure of damages in the Stock case was identical with the instruction upon the same subject in the case of C. & O. Ry. Co. v. Lang's Admr., 19 Ky. Law Rep., 65, which instruction in the Lang case was declared to contain no error.

6. The damages were not excessive. L. S. & M. S. R. R. Co. v. Rosenwerg, 113 Pa. St., 544; Fair v. L. & W. R. R. Co., 21 Law Times, 326; Choppin v. N. O. &c. R. R. Co., 17 La. Ann., 19; Shaw v. Boston & Worcester R. R. Co., 8 Gray, 45; C. & N. W. R. R. Co. v. Jackson, 55 Ill., 492; Caldwell v. N. J. Steamboat Co., 56 Barb., 426; Walker v. Erie & R. Co., 63 Barb., 260; Harrold v. N. Elevated R. Co., 24 Hun, 184; L. & N. R. R. Co. v. Popp, 96 Ky., 99; Ky. Cent. R. R. Co. v. Smith, 93 Ky., 449; C. N. O. & T. P. R. R. Co. v. Dickerson's Admr., 19 Ky. Law Rep., 1817; Austin Rapid Transit Co. v. Cullen, 29 S. W., 256; (rehearing denied, 30 S. W., 578); Chipman v. Union Pac. R. R. Co., 12 Utah, 68.

Lou. & Nash. R. R. Co. v. Creighton. &c.   Same v. Stock's Admr.

M. L. HARBESON, FOR THE APPELLEES IN A PETITION FOR A REHEARING,
OR FOR A MODIFICATION OF THE OPINION, ARGUED:

(1) That the judgments of the court below should be affirmed,
or,

(2) If not, then the opinion should be modified that the jury
should be instructed that they might find punitive damages.

Citations:   Ky. Cent. Ry. v. Smith, 14 Ky. Law Rep., 458; L. &
N. R. R. Co. v. Morris' Admr., 14 Ky. Law Rep., 467; C. N. O.
& T. P. R. R. Co. v. Dickerson, 19 Ky. Law Rep., 1818; Ky. Centl.
Ry. Co. v. Gasteneau's Admr., 83 Ky., 125; C. N. O. & T. P. Ry.
Co. v. Herklotz, 20 Ky. Law Rep., 750. L. & N. R. R. Co. v. Popp,
96 Ky, 99.

WRIGHT & ANDERSON FILED RESPONSE TO THE PETITION FOR A RE-
HEARING AND MODIFICATION.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

These two appeals involve substantially the same
facts, and have been heard together.

On April 30, 1895, about 5 o'clock in the after-
noon, a freight train of appellant was passing
along Saratoga street, in Newport, Ky., on the
track of the railroad, about the middle of the
street, moving at the rate of four or five miles an hour.
Three little children were playing in the yard of appellee,
Minnie Creighton, fronting on the street, and she was
standing at the gate of a neighbor, talking. An organ
grinder began playing on the opposite side of the street.
This attracted the attention of the children, and they
came out of the yard to go over where the organ grinder
was. When they got out on the sidewalk, appellee, Min-
nie Creighton, called to them to stop. Her two children
stopped, but the third child, William Stock, went on across
the street. Seeing that the little child, who was between
three and four years of age, was endeavoring to run across
the street in front of the train, which was then very
close at hand, she screamed, to stop the engine. There

being no answer, she said, "My God! you will kill that child." She watched for the engineer in the cab, and, seeing no one there to rescue the child, rushed out to the track; and as she was attempting to reach him, the child was run over. Before she could get out of the way the engine then struck her, fracturing her skull and hip, and inflicting other painful bruises, which caused her intense pain. The child was killed.

These two actions were filed in September, 1895, by her and the administrator of the child, to recover of appellant damages for the injury to her and the death of the child. The jury returned a verdict in her favor for $17,500, and in favor of the administrator of the child for $10,500. Several grounds are relied on for reversal; among others, that the verdicts are excessive.

The evidence warranted the submission of the cases to the jury, but it did not warrant a finding of punitive damages; and the court below properly refused to give a peremptory instruction to the jury to find for the defendant, or to give any instruction authorizing them to find punitive damages.

The proof showed that, as the train came along slowly down the street, a flagman was sitting on the beam of the pilot of the engine; and the evidence for the appellees tended to show that he had his face towards the organ grinder, with his back towards the child. This, if true, would not show any negligence on the part of appellant, as the flagman had not charge of the engine or train, and it was no part of his duty, ordinarily, to keep a lookout for trespassers on the track. This was a duty devolving upon those in charge of the engine. It was in daytime, and on a straight track. The

proof for appellees showed that the fireman was
was not on the lookout as the child came across the street,
but was shoveling coal into the furnace. This was a
duty that was incumbent upon him, and it was no evi-
dence of negligence that he was so engaged. The proof
for appellees also showed that the engineer was not ring-
ing the bell, and, although sitting in his proper position,
was not looking ahead, but had turned towards the organ
grinder, and was looking in that direction. This, if true,
was negligence on his part, however momentary may
have been his withdrawal of attention from the track in
front of him in passing along the street of this populous
city, if thereby human life was lost, or personal injuries
inflicted. The proof for appellant tended to show that
the engineer was at his post and on the lookout, but that
the child left the sidewalk and ran out upon the track
from the opposite side of the street, and so could not
be seen by the engineer at all before the train struck
him, as the boiler was between the child and the engin-
eer. If the child suddenly left the sidewalk and ran out
upon the track just in front of the train, and too close to
it for him to be seen, and the train stopped before strik-
ing him, the appellant was not liable. There does not
seem to have been any negligence on the part of any of
the trainmen except the engineer. But as the train was
going slowly, and there is evidence that the child, after
running for some feet along the track, stopped on the
track, that Mrs. Creighton had time to run out to him
before he was struck, and that the attention of the en-
gineer was then upon the organ grinder, we think the
case was properly left to the jury, but that, as the op-
portunity for seeing the child was at the most so brief,
the evidence only warranted a recovery of compensatory
damages.

**48** KENTUCKY REPORTS. [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c. Same v. Stock's Admr.

The appellee Mrs. Creighton was then about thirty-five years old, the mother of five children, robust, and attending to all her household duties. She was confined to her bed about two months. After that she went on crutches for some time, and has suffered much from hysteria and headache. Her physician testifies that from the injuries she has experienced what is known as the "change of life" some ten years sooner than might be otherwise expected, and that from the injury to the skull there is danger of her mind being affected. She testifies, however, very lucidly in this case. She lost no limb. She seems to be in possession of all her faculties, and not to be especially disfigured. She still attends to her household duties, in some measure; and, while her capacity for this is impaired, it is not destroyed. She was not earning any money, and it does not appear that she has any qualification for business or making money that is especially interfered with. Under such circumstances, we think a verdict for $17,500 is excessive, and should not be allowed to stand. This court has set aside a number of verdicts as excessive, where the facts were as strong as in this case:

In Standard Oil Co. v. Tierney, 96 Ky., 89 [16 Ky. L. R., 327; 27 S. W., 983], a verdict for $20,000 was set aside as excessive where a vigorous man, thirty years old, and earning good wages, was badly burned and disfigured for life, the use of his left arm lost, and his right hand crippled.

In Louisville Southern Railroad Co. v. Minogue [12 Ky. L. R., 378; 14 S. W., 357], a verdict for $10,000 was set aside, as excessive, where the evidence authorized punitive damages, and the appellee was nearly as badly injured as here.

In Louisville & Nashville Railroad Co. v. McEwan, [17

Ky. Law R., 406; 31 S. W., 465], a verdict for
$18,000 for injuries received by a young lady while
a passenger upon appellant's train was set aside, as excess-
ive, where she had been shot in the face, the ball breaking
the bone of the face, closing one nostril, partially para-
lyzing the face, and disfiguring her for life.

In Louisville Water Co. v. Upton, [18 Ky. L. R., 326; 36
S. W., 520], a verdict for $6,750 for loss of a hand was set
aside as excessive.

A number of other cases might be cited in this and other
States. It is hard to measure the just amount of compen-
sation in such cases as this, but the amount allowed by
the jury here is so large as to strike the mind at first
blush as excessive.

The same is true of the verdict for the death of the
child. No recovery can be had for the sorrow or suffer-
ing of the parents. The measure of damages is the fair
compensation to the estate of the child for the destruc-
tion of his capacity to earn money. The child was under
four years of age. There are many diseases incidental
to childhood, and it was by no means assured that this
child would reach manhood. His earning capacity would
be nothing, or comparatively little, until he reached pu-
berty, or near that time. In the meantime he would have
to be supported, if he survived the dangers incidental to
childhood. What his earning capacity would be after
all this is largely a matter of conjecture. This court has
sustained a number of verdicts for loss of life, where com-
pensation only was allowed, from amounts ranging from
$5,000 to $10,000, for adults who were vigorous and had
actual money-earning capacity; but we do not think that,
where compensation only is allowed, a verdict of $10,500
for the death of a little child like this ought to stand.

[4]

**50** KENTUCKY REPORTS. [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c. Same v. Stock's Admr.

The appellee, Mrs. Creighton, did a most heroic deed, that was calculated to win the sympathies of the jury, rendering it very difficult for them to try this case dis-passionately. Her health was in a great measure wreck-ed, and it was very hard for the jury to keep out of their hearts, no doubt, the feeling that the defendant ought to pay high for the gloom that had thus been brought upon two households. But these sad occurrences are neces-sarily incidental to our mode of life and business. Money can not atone for them. The real injury can never be made good. This the law does not attempt to do. It simply tries to measure the pecuniary loss sustained, and it does not justify a recovery beyond a fair compensation for the injury. The judgment in each of these cases is therefore reversed, with directions to the court below to grant appellant a new trial.

JUDGE GUFFY DISSENTING.

I heard the argument in these cases, but was not pres-ent when the opinion was handed down; hence my dissent does not appear upon the record as made at that time. But I deem the question involved of so much importance that I feel it my duty to file this my dissenting opinion.

It will be seen from the opinion that the suit was to recover for the death of William Stock, an infant about four years of age, killed, as is alleged, by the negligence of the appellant, in a large city. The jury, under in-structions which the majority opinion does not con-demn, found a verdict for Stock's administrator in the sum of $10,500, which is reversed by the majority opinion. It is said in the majority opinion, in substance, that the verdict is excessive, and the majority opinion further says: "No recovery can be had for sorrow

or suffering of the parents. The measure of damages is a fair compensation to the estate of the child for the destruction of his capacity to earn money. The child was four years of age. There are many diseases incident to childhood, and it is by no means assured that the child would reach manhood. His earning capacity would be nothing, or comparatively little, until he reached puberty, or until near that time. In the meantime he would have to be supported, if he survived the dangers incident to childhood. What his earning capacity would be after all this is largely a matter of conjecture. This court has sustained a number of verdicts for loss of life where compensation only was allowed for amounts ranging from five to ten thousand dollars for adults who were vigorous, and had actual money-earning capacity; but we do not think, where compensation only is allowed, a verdict for $10,500 for the death of a little child like this ought to stand."

It seems to me that the majority opinion is without any foundation, and is a palpable invasion of the province of the jury. That appellant negligently destroyed the life of the child is established by the verdict of the jury, and not disputed by the majority opinion. It was the province of the jury to estimate, from all the facts and surrounding circumstances, the damage; and, if the jury system is not a total failure, the jury was better qualified to judge of the damages than this court. But I wish particularly to dissent from the statement in the opinion that no damages are recoverable except the amount of money which the infant would earn during its life, after deducting the necessary expenses of living. Such a construction is unwarranted by the Constitution and statute which authorize a recovery in such cases. The majority opinion holds emphatically that the right to

**52** KENTUCKY REPORTS. [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c.   Same v. Stock's Admr.

live is worth nothing, and that no recovery can be had by any person for the destruction of human life, which to my mind is contrary to the principles of humanity, Christianity and the civilization of the age, and contrary to the plain language and meaning of the Constitution. It has been thought by many that the right to live was the most valuable and the most highly prized of all other rights pertaining to a human being, and yet the majority opinion holds that the only damage that can be recovered is the net sum of money which the decedent would probably have earned, less his expense of living. I do not think that this court had any right to assume that this child would not earn $10,500 over and above his expenses. If he should have had the good fortune to become the president of a railroad company, at $25,000 per year, he would in a very few years have earned more than $100,000. If it should have been his good fortune to become a judge of the Supreme Court of the United States, in a very few years he would have earned many thousand dollars; or, if it had been his good fortune to become a judge of this court, in eight years he would have earned $40,000, and, allowing $2,000 per annum for his personal expenses, he would have earned in eight years $24,000, even if he had not been re-elected; and the jury had just as much right to assume that he would earn a large amount of money as this court had to assume that he would not do so.

It is a well-known fact that many men earn many million dollars during life, and, if one of them should be killed by the negligence or wrongful act of any person or corporation, the recovery, under the doctrine announced in the majority opinion in this case, would amount to millions. If such a man as ex-Senator Brice,

or a man like Gould, Vanderbilt, Rockefeller or many others who might be named, had been killed, instead of the child Stock, the judgment must have been for millions of dollars, because the earning capacity could have been established beyond all question; and that, taken in connection with the probable duration of life, would have called for a judgment which would probably bankrupt almost any individual or corporation.

This court in L. & N. Railroad Co. v. Morris, [14 Ky. L. R., 456; 20 S. W. 539], refused to require the jury to deduct the living expenses of the decedent from the amount he could earn; and the original opinion in Chesapeake & O. R. Co. v. Lang's Adm'r, 100 Ky., 221, [19 Ky. L. R., 65; 38 S. W., 503], adhered to the opinion in the case *supra*. If the doctrine announced in the opinion in this case is the law, then no recovery can be had if the decedent could not have earned more than living expenses, and thus a plain and positive provision of the Constitution would be abrogated or disregarded entirely. It will not do to say that nominal damages, or one cent, could be recovered in all cases, under the opinion in the case at bar; for if the power to earn money does not exceed the cost of living, as announced in the majority opinion in this case, then not even one cent can be recovered, and the result will be that persons and corporations may negligently destroy the lives of a large number of citizens with perfect impunity, and absolutely escape all pecuniary responsibility therefor; and, if the meaning of the Constitution be such as is declared to be the law in this case, life may be destroyed by gross negligence, and still the result must be the same, for it is absurd to say that the estate is damaged any more by the destruc-

**54**      KENTUCKY REPORTS.     [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c.    Same v. Stock's Admr.

tion of the life through the gross or willful negligence than by ordinary negligence. The grossness of the negligence has no effect whatever upon the power of decedent to earn money, nor the necessary cost of his living during life.

If it be true that this court, or any other court, has ever announced the doctrine embraced in this opinion in this case, such decisions should be overruled. They are, in my opinion, in direct conflict with the plain provisions of the Constitution, and contrary to humanity and the civilization of the age. It is better to follow the law and justice than to follow precedents. The manifest effect of the opinion in this case is to add to the constitutional provision, *supra,* a provision which would make the section of the Constitution, *supra,* read as follows: "Damages may be recovered in cases where the power of the decedent to earn money is greater than his necessary expenses of living," which, it is plain, would change the language and meaning of the section of the Constitution.

The Constitution says that in every such case damages may be recovered for such death. But the opinion in this case clearly says that no damages can be recovered unless the decedent's power to earn money exceed his necessary expense of living. I insist that the Constitution ought to be the rule of action, and it is the supreme law of the land that no court is authorized to disregard by adding to or taking from.

The opinion in this case is also in direct conflict with section 6 of the Kentucky Statutes. It also seems that the court took into consideration the cost incident to the raising and nurture of the infant, which is, to my mind, palpably erroneous; for it is a legal duty of the

parent to rear and take care of his child, and we have the anomalous condition of a parent being denied compensation for loss of the life and society of his child, and yet the cost of his rearing to be deducted from his power to earn money. It seems also, from the majority opinion, that the court was of opinion that this infant was a trespasser upon the track of the appellant railroad. But it has been uniformly held by this court that it was the duty of a railroad, in running its trains through towns and cities, to keep a lookout upon the track. It is clear to my mind that a child about four years old can not be a trespasser. Moreover, it is my opinion that no railroad acquires such an interest in its track as to prohibit persons from crossing it if they desire so to do. In other words, a railroad can not, by building through a man's farm, or through a county, or through the entire State, thus acquire such an exclusive right that every citizen must go to a public crossing in order to cross its track, or otherwise be deemed a trespasser.

As a further dissent, I here copy as follows from my two dissenting opinions in the case of Louisville & N. R. Co. v. Eakin's Adm'r, 103 Ky., 465, [20 Ky. L. R., 743-8; 46 S. W., 496, 47 S. W., 872]:

"I dissent from so much of the opinion in this case as holds that any portion of the earnings of deceased, necessary for his own expense, should be deducted from the amount the jury should be allowed to assess as damages for the destruction of his power to earn money. The portion of the opinion from which I particularly desire to dissent reads as follows:

" 'In the fifth instruction the court said: "If the jury find for the plaintiff, the measure of damages will be the capacity of deceased to earn money, coupled with

**56** KENTUCKY REPORTS. [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c. Same v. Stock's Admr.

his expectation of life." This instruction is in direct conflict with a number of recent adjudications of this court. Under it, all that was necessary for the jury to do to arrive at a verdict, was to determine how much deceased was capable of earning in a year, and multiply that amount by his expectation of life. This entirely leaves out of view the fact that deceased necessarily applied a certain portion of the money earned by him to his own support. The true measure of damages is not the capacity of deceased to earn money, but is such a sum as will reasonably compensate his estate for the destruction of his power to earn money and in arriving at the amount of this sum the jury are authorized to consider all the testimony in the case bearing upon this question. This question has been so carefully and thoroughly considered by this court in Louisville & N. R. Co. v. Graham's Adm'r, [17 Ky. L. R., 329; 34 S. W., 229]; Louisville & N. R. Co. v. Kelly's Adm'x, [19 Ky. L. R., 69; 38 S. W., 852]; Chesapeake & O. R. Co. v. Lang's Adm'r, [19 Ky. L. R., 65; 38 S. W., 503], that any further elaboration of this idea is unnecessary.

"It seems to me that the rule announced in the opinion, *supra*, is in conflict with section 241 of the Constitution, which reads as follows: 'Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case damages may be recovered for such death from corporations and persons so causing the same.'

"And also in conflict with the spirit of section 54 of the Constitution, which reads as follows: 'The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.'

"The rule announced in the majority opinion in this case would always prevent the recovery for any damages where the power of the decedent to earn money was not greater than the amount necessary to defray his expenses of living, or, in other words, to furnish him with food, raiment and shelter and pay his taxes, and would certainly defeat recovery in all cases where the decedent was not able, or his capacity was not sufficient, to earn more money than was necessary to furnish him with food, raiment and shelter.  Such a rule would, in a large number of cases, defeat any recovery for damages for the killing of a wife, because the capacity of a wife to earn money in excess of what it would cost to furnish her with food, raiment and shelter could not be shown, for the reason that it would not, in fact, exist and the same may be said in regard to the killing of infants, for, after deducting the cost of their necessary nurture and their support after maturity, their power to earn money would rarely exceed the expenses aforesaid.  Can it be that the organic law of the land intended that the husband should recover of the party causing the death of his wife only so much as she was able to earn over and above what was necessary to support her?  Or can it be said that such a rule should be applied to the destruction of the life of an infant?  Under the rule announced in the majority opinion, it is manifest that no recovery could be had for the destruction of the life of an old and infirm person, because it is manifest, and must have been obvious to the framers of the Constitution, that such person could not earn more money than was necessary to support him.

"If the framers of the Constitution had intended that the net earnings of the decedent should be the criterion of recovery, it seems clear to me that they would have

so expressed it; but the expression used is 'damages,' and, to my mind, that can only mean such damages as the party to be affected thereby sustained.

"In the case of husband or wife, the damages include, not only the power to earn money, but damages incident to the deprivation of the society of the life partner, as well as the satisfaction of having some one vitally interested in the welfare of the family to look after and care for its interest. I know of no case where the party suing for personal injuries was restricted in the right of recovery to only such net sum of money as they could earn over and above their expenses. Not only so, but such persons have been allowed to recover for mental and physical suffering, as well as the necessary expenses incident to medical treatment.

"Indeed, I am not aware of any case in which the damages for wrongs inflicted are restricted as is proposed in the majority opinion in this case. So far as I am advised, no such doctrine was ever announced by 'this court prior to the Lang case, nor by any circuit judge of this State.

"For the reasons indicated, and for many other reasons not now deemed necessary to state, I feel it my duty to file this dissenting opinion."

\* \* \*

"Since the filing of my dissenting opinion of June 15, 1898, a petition for rehearing has been considered and overruled by the court. The majority opinion has, however, been modified by striking therefrom the following: 'This entirely leaves out of view the fact that deceased necessarily applied a certain portion of the money earned by him to his own support.' This modification of the opinion, however, leaves the majority opinion open to the

construction that damage to the estate of the decedent is all that can be recovered; in other words, that no recovery can be had beyond the number of dollars that the decedent would earn over and above his necessary expense of living, and entirely leaves out of view any damages resulting to any person for the loss of society or personal care or attention of the deceased. Such a construction is not, as I think, authorized by the language used in the Constitution, nor supported by reason or humanity. There can be no damage to the estate except in dollars, for the only meaning that can be properly attached to 'estate' is money or property. Section 241 attached to 'estate' is money or property."

Section 241 of the Constitution reads as follows: 'Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly shall provide how the recovery shall go and to whom belong and until such provision is made, the same shall form a part of the personal estate of the deceased person.'

"It will be seen from the foregoing provision that the Constitution uses the term, 'in every such case damages may be recovered for such death.' But if it be true that only the damage to the estate can be recovered, then it follows that in many cases no damages can be recovered, because the injured party would be incapable of adding anything to his estate, while in many other cases he or she could add nothing in excess of what was necessary for his own or her support and thus the decision of the court

**60** KENTUCKY REPORTS. [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c. Same v. Stock's Admr.

would, in effect, destroy a plain provision of the Constitution.

"It will be further seen, from the provision of the Constitution, that it was not intended by the framers of the Constitution that the damages should constitute necessarily any part of the estate of the decedent, because it is provided that the General Assembly may provide how the recovery shall go and to whom belong, with the further provision, until such provision is made, that the damages shall form part of the estate of the deceased person; the latter provision being evidently inserted to prevent confusion until the Legislature acted. It seems clear to me that the rule announced in the majority opinion is in conflict with the plain meaning of the Constitution, and also inequitable, because in many instances the survivor would not be seriously injured, except on account of loss of society of the decedent, but nevertheless would be entitled to have a large judgment.

"For instance, a judge of the Supreme Court of the United States earns at least $10,000 a year for life; and $2,000 for personal expenses, I take it, would be a very liberal allowance; and if his expectation of life was fifteen years, the damage to his estate by the destruction of his life could not be less than $120,000; while another man might not be able to earn more than one dollar per day, and more than one-half of that would be required for his support, and his expectation of life might be the same, while the recovery for his death could not exceed $2,500, and yet, as a matter of fact, his death would entail more want and suffering upon those depending upon him than those in the former case. Again, many railroad presidents, and presidents of other large establishments, receive $25,000 per year, and it is liberal to allow $2,000

per year for their personal expenses; and, applying the same rule of damages, the recovery for the death of such a one would be $345,000.

"It is perfectly clear that the estate would be damaged to that extent, unless we should assume that he would not be able all his life to earn such a salary. Similar results would attend the recovery in case of death of a great number of officers who hold during life. It seems to me that the framers of the Constitution never intended any such results. The parties most interested in the life of another are the wife, husband, parent and child, and evidently the framers of the Constitution intended that they should be entitled to recover such damages as they sustained; and, as before indicated, the loss of society and personal protection is the chief element of damage.

"Can it be that the framers of the Constitution intended that the husband or wife, although incapable of earning a dollar per month, might be killed by the negligence of some person, and the survivor unable to recover any damages? I think not.

"It seems to me that the Legislature which met soon after the adoption of the Constitution understood the constitutional provision as I now understand it. Section 6 of the Kentucky Statutes provided for the enforcement of the constitutional provision, and thereby discharged the duty imposed upon it. Said section reads as follows: 'Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case, damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, their agents or servants, causing the same, and when the act is willful or the negligence is gross, punitive damages may be recovered, and the action to recover

**62**     KENTUCKY REPORTS.     [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c.    Same v. Stock's Admr.

such damages shall be prosecuted by the personal representative of the deceased. The amount recovered, less funeral expenses and costs of administration, and such costs about the recovery, including attorney fees, as are not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased in the following order, viz.: First, if the deceased leaves a widow or husband, and no children or their descendants, then the whole to such widow or husband; second, if the deceased leaves either a widow and children or husband and children, then one-half to such widow or husband and the other one-half to the children of the deceased; third, if the deceased leaves a child or children, but no widow or husband, then the whole to such child or children. If the deceased leaves no widow, husband, or child, then such recovery shall pass to the mother and father of the deceased, one moiety each, if both be living; if the mother be dead and the father living the whole thereof shall pass to the father; and if the father be dead and the mother living, the whole thereof shall go to the mother; and if both father and mother be dead, then the whole of the recovery shall become a part of the personal estate of the deceased; and after the payment of his debts the remainder if any, shall pass to his kindred more remote than those named above, as is directed by the general law on descent and distribution.'

"It will be seen from the section *supra* that after the payment of funeral expenses and the cost of administration, and such costs about the recovery, including attorney fees, as are not included in the recovery from the defendant, the amount recovered shall go first to the widow or husband, in the event that the deceased left no children or descendants; but if the deceased leaves a widow and chil-

dren, or husband and children, then one-half to such widow or husband, and the other to the children of the deceased. Further provision is made, in the event of the deceased leaving neither descendants, widow, nor husband, that the recovery shall pass to the mother and father; and, in the event that the deceased leaves none of the relatives mentioned, it is provided that the recovery shall become a part of the personal estate of the deceased, and, after the payment of his debts, the remainder, if any, shall pass to his kindred, under the general law of descent and distribution.

"Thus, it will be seen that the Legislature utterly failed to recognize or treat the damages as a part of the personal estate of the decedent, in the common acceptation of the term.

"It is further provided in the section *supra* that when the act is willful, or the negligence is gross, punitive damages may be recovered. If the true meaning of the Constitution is that the damage to the estate of the decedent is all that can be recovered, then it must follow that no punitive damages can in any case be recovered; for it is impossible for the willfulness or grossness of the act to increase the damage to the estate. When a party is dead, his capacity to earn money is effectually and entirely destroyed, and the damage to his estate can neither be increased nor decreased by the character of the act causing his death. The mental anguish of the widow, husband, parent and child may be increased because of the grossness or willfulness of the act, and, indeed, such would always be the case; but the character of the act can in no wise affect the estate.

"The court below in the case at bar authorized the jury to find for the plaintiff the damages sustained by the

64 KENTUCKY REPORTS. [Vol. 106

Lou. & Nash. R. R. Co. v. Creighton, &c. Same v. Stock's Admr.

widow and children, not exceeding the amount sued for, which instruction is condemned by the majority opinion. It is suggested that they are not parties to the suit, but we have seen, from the statute heretofore quoted, that they were the chief beneficiaries, or, in other words, entitled to most of the recovery; and, in my opinion, the prime object of the provision in the Constitution was for the benefit of the surviving widow, husband, parent and children.. Some quotations from decisions of other States are embodied in the majority opinion in support of the opinion. It does not appear whether or not the decisions referred to were rendered under such provision as we find in our organic and statutory law. I therefore assume that such was not the case, but, if my assumption is wrong, I still have no hesitancy in holding that such opinions are radically wrong.

"I think it was the intention of the framers of the Constitution that all damages that a survivor sustained by the loss of life, as specified in the Constitution, should be recovered, and that it was the intention that the loss of society, care, and protection reasonably given, and expected to be given by the decedent, should be given sidered in estimating the damages; and therefore the plaintiff in such cases should be allowed to prove whether the decedent left a companion or children or parents, and that the damage suffered by such bereft relative should be recoverable. Such a rule would be fair, reasonable and humane. Where there are no such relatives as those mentioned in the statute, a money consideration would be the just and proper criterion; for, as a rule, a creditor or distant relative would sustain no damage, except to the extent that the death of the party lessens the amount of money which he would leave for distribution.

"It is difficult to understand how the estate of decedent is to be compensated for damages caused by the destruction of decedent's power to earn · money. Estate is property. If the decedent owned an estate at the time of his death, the same remains. Estate is not a person capable of suing or being sued, nor can it be affected by sorrow or joy; hence, I conclude that it can not suffer damages nor be compensated. But I can understand how a husband or wife, parent or child, may be damaged by the death of a relative or companion, and I can understand how some compensation might be made; and it seems to me that the Constitution has provided that such injured party may be compensated for not only the power of decedent to earn money, but for the loss of the society of the decedent, which is often more valuable and desirable than the money he could earn. Take the case of a wife and children who have sufficient estate to enable them to supply every want or demand; the death of the head of the family would, so far as money is concerned, be little or no damage, although he was earning $10,000 per year, but the loss of the society and protecting care of the decedent would be very great damage to the wife and children; and for such damage, it seems to me, they are entitled to recover. On the other hand, I can imagine a case of an old and infirm couple, who have accumulated enough to live upon, but who now unable to earn a dollar. It is possible, if not probable, that the wife may lose her life by the negligence or wrongful act of some one, and yet, as she has no capacity to earn money, no recovery could be had, under the doctrine of the majority opinion, as I understand it; yet it can not be denied that the damage to the bereaved husband would be very great. It appears clear

[5]

to me that the Constitution says that the husband is entitled to damages for the loss of his companion, and that enjoyment of her company is one of the elements of damages for which a recovery is allowed.    The law is not harsh.  If the killing be not the result of negligence or wrongful act, no recovery can be had.  If it be the result of negligence or wrongful act, the wrongdoer should make reparation in all cases.

If no recovery can be had except for the destruction of the power of decedent to earn money, less the necessary cost of living, then there can be but little recovery in the great majority of cases; and in many cases there can be no recovery at all, while in a few cases the recovery must be immense.

"Section 54 of the Constitution provides that 'the General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death or for injuries to person or property.'

It appears to me that the majority opinion limits the recovery provided for, by excluding one of the elements of damage, viz., loss of company, society, and association, which, to my mind, is usually the chief damage sustained by the party damaged.  The importance of the question involved is my only apology for this earnest, but respectful, dissent."

I also dissent from the opinion reversing the judgment in favor of Creighton, for the reason, first, that the proof abundantly sustains the verdict of the jury, and that setting it aside is an invasion of the province of the jury. It has always been the law of this State that the jury was peculiarly fitted to assess damages, and there is nothing in this case to authorize the conclusion that the jury were influenced by passion or prejudice.

Moreover, section 54 of the Constitution provides, "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property," And unless there is some extraneous circumstance, or evidence that the jury was influenced by passion or prejudice, this court has no legal right to say that the verdict is excessive. And, besides, the testimony in this case, by the physicians, shows that the plaintiff, Creighton, had a fracture of the skull, extending from the occipital protuberance or base of the skull around to the ear (a fracture of about four and one-half inches), in which you could lay your finger between the bones of the skull; that the doctors had to introduce a scalpel, and spring the skull back into place; that the brain was exposed; that there were four other cuts, extending from the eye up over the head, about eight or ten inches in length, and another on the left side, probably four or five inches, along the scalp, and others from two and one-half to four inches, and one other fracture of the skull, and also a fracture of the hip joint; that she was in bed eight weeks, with a constant weight of twelve to fourteen pounds upon the limbs. She was bruised all over her body where the wheel had cut her and thrown her around, and her body was black and blue all over her back and limbs. Her left ear was cut, and she was cut about the face. The injury affected her whole nervous system, making her hysterical—she continues to suffer with her head—and has caused a change of life probably ten years earlier than she ought to have had it, she being now thirty-five or thirty-six years of age. Her injuries have incapacitated her from doing work. She is nervous and excitable, and will be found crying in the middle of the night, hysterical and nervous. And the doctor also

gave it as his opinion that her injuries are permanent, and will increase, and that she will eventually lose her mind.

It seems to me that the injuries, as described by the physicians, to say nothing of the other evidence, fully warrant and sustain a larger verdict than $17,500. From the expressions in the opinion, it might be inferred that it is based upon the theory that the destruction of her power to earn money is the criterion of recovery in her case; but I hadly think that such was the intention. If so, it is in direct conflict with all the decisions that have ever been rendered by this court in regard to personal injuries.

It must be remembered that the testimony heretofore referred to was taken in December, 1896, and that the injury complained of occurred in April, 1895; hence it is perfectly clear that the injury to plaintiff is permanent, and that she is prematurely aged, to the extent of ten years, as a result thereof; and besides she is in imminent danger of losing her mind.

It seems to me that the injuries inflicted are such as to not only sustain and justify a verdict for $17,500, but even to authorize a much larger one. The two facts of the premature age of ten years and the present injury to her mind, with the probability of its total destruction, alone sustain, and in fact called for, a verdict as large as the one rendered by the jury.

I apprehend that no person would be willing to suffer the two injuries named, for double the amount of the verdict in this case. It is true that the money recovered would not restore plaintiff to her former condition, but it would enable her to procure the best medical treatment possible, as well as to enable her to obtain

all other means possible to relieve her deplorable condition, and to surround herself with what conveniences and luxuries it might be possible to obtain, to relieve, and if possible to alleviate, her suffering, as far as human skill and appliances can do so.

For the reasons given, and many others that might be stated, I very earnestly and respectfully dissent from the majority opinion in these cases.